We have three core arguments. First, that Mr. Ozurumba's forced cooking did not constitute material support because it was neither relevant nor significant to terrorism. Second, that Mr. Ozurumba's actions did not constitute material support because they were done under duress. And third, the BIA made multiple errors in its CAD analysis. I plan on focusing the bulk of my time, your honors, on those first two arguments and I'd like to begin by discussing materiality. Fundamental principles of statutory interpretation demand that the word material must mean something. Can I just ask the threshold question and then you can come back to this? Does the second question inform the first, right? Because there's a seems to be a period of time that was voluntary, that was small, and then there's a longer period that you allege is under duress. It seems a little hard for me to think about the first question without sort of an answer to the second question. I'm happy for you to go in any order, but do you agree that that's like as a framing matter, if we reject your duress argument, that your material argument becomes much harder? I don't necessarily think it's in that order because the materiality argument, even if the court disagrees with the duress argument, and Mr. Ozurumba's actions never constituted material support, it never constituted material support regardless of the duress question. And so to your second point about whether that first bit was material, or sorry, the first bit was voluntary as opposed to that second bit being duress, Your Honor, that question is important because at all relevant times, Mr. Ozurumba was acting duress. And I say relevant because prior to his becoming aware of the nature of the organization, he wasn't covered by the statute at all. This is because tier three terrorist organizations like the known gunmen here, the material support bar has an explicit knowing requirement. So Mr. Ozurumba did not know the nature of the organization when he started working at the camp, and once he found out, at that point his actions became under duress. That first question, that first bit, Your Honor, is covered by that knowing requirement in the statute, Your Honor. So you think that these questions are really alternative, they're not sort of in conjunction? Yes, Your Honor. If Mr. Ozurumba's support or actions did not constitute material support, and he's not covered by the bar, Your Honor, or if the court finds that Mr. Ozurumba's actions were material, but they were done under duress, also his actions did not satisfy the bar. I just want to understand the framework. And so the question that when we're at, when I'm trying to answer this question of materiality, you would have me look at the entire time period that he cooked for the organization, and the question is whether that is material, and if so, then I answer the second question, is the fact that you allege that portion was under duress takes that out? Yes, Your Honor. Okay, thank you. Yes, of course, thank you, Your Honor. And so, although the precise meaning of the word material always depends on its context, the word always has the effect of raising the threshold of the word it modifies. And so based on the context here, based on the definition of the word material, based on the list of illustrative examples given in the statute, mere support becomes material support when it is both significant and relevant to terrorism. As this court has held, support can be significant when it is sufficiently substantial standing alone to have an effect on the ability of the organization to accomplish its goals. Support can also be significant when it gives legitimacy to the organization. Can you address our decision in VIEGAS? Yes, Your Honor. Because the court seems to understand there are other places, you keep using the word significant, VIEGAS seems to sort of set the bar like quite a bit lower, sort of saying, you know, he paid, you know, a couple of dollars and like put up posters, and that that was material. Can you put it in those, that framework for me? Yes, Your Honor. This seems like, the point being is that we talk about very small amounts of things, but over a extended period of time, which is I think the issue we have here, I'm cooking every day, but I'm doing it over the course of a number of a number of months or years. Why am I not thinking about this in the same way as that? No, Your Honor, we absolutely agree that this court should apply VIEGAS. VIEGAS is an important part of this, but I do think that that sufficiently substantial standing alone, sort of piece of it, gets to that significance aspect. Significantly substantial standing alone does raise a threshold here. And so in VIEGAS, you're also, and so we absolutely say that that is that is an important part of the test, that this court should absolutely apply, and then Ms. Rosarumba's actions don't satisfy that here. And the distinction between this and VIEGAS, Your Honor, is we acknowledge that VIEGAS was about, was about money and about about hanging flyers. And several courts have held that the act of hanging flyers is very important to a terrorist organization because it helps with recruiting. That was the case in Hosseini, that was the case in I think a Seventh Circuit case called Kahn, Your Honor. That act itself has been held to be quite important. And when it comes to funds, based on the construction of the statute and that second use of the word material, we do concede, as I believe we have to, it's in the Ninth Circuit and the Eleventh Circuit, that funds are material. And so that is the distinction here between what we're talking about with VIEGAS. What about the words transportation and communication in the statute? On their face they seem to be broad and not connected to weapons or funds, but they're just broad support. So why isn't cooking like those, like providing that kind of material support? Thank you, Your Honor. That, those examples certainly can be used. I think it's important to apply a sort of an individual analysis here, whether this individual actually engaged in material support. So to take those, to take communications for example, communications certainly can be material support. If someone, for instance, is on a radio providing real-time targeting information to support a terrorist attack, that is undoubtedly material to terrorism. But what about the, let's say the telecom company, Your Honor, providing cellular coverage and knowingly providing cellular coverage in an area where terrorists operate? I don't think we think of that as categorically being material. It requires an analysis and running it through. Is it actually material? Or to take transportation for example, transportation certainly can be highly relevant to terrorism. For example, a getaway driver. But take another example, what about the bus driver for the regional bus service? If a part of his ordinary bus route, he picks up and someone boards the bus that is a known terrorist and he doesn't kick him off the bus, has he categorically provided material support to terrorism? And I think the answer has to be no. I think both the statutory construction by the framing of material, Your Honor, demands that the discrete act itself be individually analyzed. And even training, Your Honor, gets to that question. I mean training, weapons training is unquestionably material support. But what about, to just take a hypothetical, that the terrorist who decides they want music lessons, is the person they hire to give training for piano lessons, providing categorical material support to terrorism? I think we think the answer, Your Honor, has to be no. And it's because the word material is doing work here. It's because the word material has an important significance and relevance aspects. That's the through line, dividing those lines between those examples, Your Honor. And so here, with Mr. Rosarumba, to take his example, he prepared food for the camp's leaders. He did so alongside several other cooks who cooked for the rest of the camp. Under the government's characterization, Mr. Rosarumba's value to the organization was that he was able to cook recipes that the leaders liked and that the leaders preferred. But that resource, that discrete act of support, the quality of his cooking, is immaterial to terrorism, Your Honor, much like the bus driver. There's a statutory text here. And we have, in cases like Villegas and a number of other cases, relied upon review on the Chevron deference there. Well, Loper Bright, the Supreme Court case, got rid of Chevron deference. Yes, sir. But there remains the question, first, going forward, did we just apply to Skidmore deference, which I think is probably the direction to go. But more important question is, what's the value of those cases that applied Chevron deference, like Vegas, in terms of looking at this statute? Do we, on our own now, forego that and look at this statute? This is where we get into the question of materiality and relevance and significance, which goes beyond those cases because those cases relied upon Chevron deference. Yes, sir. The implications of getting rid of things like Chevron deference is far longer than saying maybe for the future. I don't know. But if it relied upon it, and that's the basis upon what that text we're now looking at, what do we do here? And so I think that's, you know, it still goes to the ultimate question, is this material? I mean, is this cooking? Like, communication is like transportation, that sort of thing. But the question that you, fundamentally, the first thing to deal with is, is what, where are we? What are we limited by? Are we limited by those Chevron deference cases, or are we now in a more of a de novo, or at least we are in a review of the statute, then without this limitation, maybe a Skidmore deference limitation or others, which some people say Skidmore is not even Skidmore. I don't know what it is, but I think that needs to be addressed first, to know what we can do. Because I think before Loba Bright, we are limited by, definitely will be, because I'm not sure the retroactivity applies to those two, to getting rid of the stare decisis effects of those early cases. Yes, just to be precise, you're asking about Villegas and Barahona, not the agency, are you also asking about... The case in which we are to look upon the stare decisis that relied upon Chevron deference for the basis of its holding, to what extent are we now to follow those statutory interpretations that were rendered as a result of looking at Chevron deference? Understood, Your Honor. So, those cases are not binding because this court is reviewing new agency action. The agency has since acted, and since this court has applied its Chevron deference. So, and it's important, this... But how is that consistent with our recent decision in Chavez versus Bondi? The chief wrote an opinion that sort of seems to, like, fundamentally disagree with that, right? That sort of says, no, we maintain the results of those prior actions, so the statutory interpretation that took place continues to apply. That's what Loper Bright seems to say, but to the extent there's not clarity there, it seems like the chief's recent opinion sort of answers this question. So, I don't think necessarily it applies... So, the precise question there is, was applying Chevron deference, at least that my reading of Chavez, Your Honor, gets to whether Skidmore is applied to the agency action itself. And there's two separate questions here. There's this question of Skidmore, of whether this court should apply Skidmore deference to the agency opinion, and there's also the separate question of what value this court's prior opinions, in Villegas and Barahona, and whether this court is bound by them. And they're not bound, and here's what... Well, but that's what Chavez says, is that we are bound, right? I take Chavez's... The Skidmore question is a separate one in Chavez, but I take the chief's discussion there to say that Loper Bright doesn't wipe away the results. And if it doesn't wipe away the results, then prior panel decisions remain binding, right? If Loper Bright hasn't wiped them away, our rules tell us that we are bound by our prior decisions, right? Because we might think about the reasoning differently doesn't help. It has to be either overturned by the Supreme Court, or so substantially undermined by the Supreme Court. And what Chavez tells us is Loper Bright doesn't undermine those cases. Absolutely, Your Honor. I absolutely agree with that, because it doesn't come from Loper Bright. It comes from Brand X, and it comes from this court's application of Brand X. This court has done this multiple times in this exact situation under the BIA. Under Fernandez v. Kiesler, Your Honor, the BIA-issued opinion, this court... I'm sorry, so wait, just back me up a second. So your position is that our prior decisions that relied on Chevron were undermined by Brand X, and so therefore are not binding on us anymore? No, I'm saying that this court... so to take the Fernandez example, the BIA issued an opinion. This court issued or demonstrated Chevron deference, and issued deference to that opinion. The BIA then acted again and changed its opinion. This court that was presented in Fernandez, the question specifically was whether to apply its previous precedent, or whether to apply new Chevron deference to that second BIA opinion. And in Fernandez v. Kiesler, this court cited Brand X, and specifically said that it needs to apply Chevron deference anew, or Chevron review anew, to that second action, and not defer to its prior precedent. Well, you know, what you really need to get to is, yeah, Chevron said that, but it said we couldn't change the results. Didn't say it was correct. Couldn't be. I mean, when you think about it, it cannot be, as a Supreme Court says, we can't give deference to an agency's interpretation, and we have prior opinions that rest upon an agency's interpretation that we gave deference to. The Supreme Court says that's not good, because Chevron doesn't give you that anymore. The results could still be, as Judge Diaz pointed out, you know, the right results, but it doesn't keep us from looking to see if that statute... We're not bound to go back to this agency's deference on the Chevron. We cannot be. I mean, if we are, then I don't know. Chevron only applies to stuff that's going forward and not back. It doesn't seem to follow that. We're stuck with a statutory interpretation that an agency made because we gave deference to it. Supreme Court says, no, you're not. So I'm not saying we can't use them for prior precedent or value, but their interpretation of a statute is something fundamentally, it seems that is before us, because they wrongfully now, in the eyes of the Supreme Court, relied upon an agency's interpretation. That's the court's job, and we still have that job. But it may not change the result of your case at all. But in terms of how we view it, to just blindly say, well, we're gonna rely on that case because it held this statute said that, and relied upon Chevron deference to do so, Supreme Court said, you cannot do that because it's giving this agency deference, which is your job, we give Skidmore. So, I mean, it may not be a difference at the end of the day for you, I can tell you that right now, but at least in terms of getting that right and making sure we articulate it is important for this case and other cases to understand how do we look at those previous cases that relied upon Chevron deference. But absolutely, Your Honor, I see I'm out of time. I'd be happy to respond to that question if you'd like. I'm happy to pick it up on the phone, Your Honor. You've got some time coming back. Can I? Well, if you want to respond on the reply, will you add this to your response, which is, does that same analysis apply now that the Supreme Court has told us we don't look at legislative history? So any Fourth Circuit decision that previously relied upon legislative history to reach a result now is no longer binding on a current panel of the Fourth Circuit. Is there a difference between the discredited reliance on an agency and the discredited reliance on legislative history such that we should think about those two outcomes differently? Or in your view, do you think that, um, the sort of discredited reliance on legislative history now means that any case that relied on legislative history is not good law in the same way that any reliance on Chevron is no longer good law. I'm happy to take it up in a row. Thank you, Your Honor. Thank you, Counsel. Mr Stone. Good morning. May it please the court. My name is Paul Stone. I represent the respondent attorney general of the United States. The petitioner cooking meals three times a day, seven days a week over six months, three with pay and with three without for the 15 to 17 leaders of the unknown government terrorist organization is material support to that organization because it helps sustain it so it could engage in violent terrorist acts. So So the questions we've been going back and forth on what is material support and to what extent do we rely upon previous cases of this court? Judge Richardson is rightly pointed out the shipwrecked case that indicates that we are the least to look at the results of those prior cases that are there. And I'm only asking in terms of how to set this thing up from jurisprudence perspective, how we deal with it, that fundamentally are we now bound by cases is your is it your position were bound by those cases that the court use Chevron deference, which is, uh, essentially we defer to the agency's interpretation of a statute. Court says, No, you don't do that. It's your job to interpret that statute. And skid more assume is one of the ways maybe it an oral whatever to do it to the question. At least the initial question is, are we bound not so much by the cases? Well, by about occasions, but by their statutory interpretation that was rendered through Chevron deference. Well, our interpretation of Loper Bright is that the court remains bound by its decisions, including the statutory interpretations where the agency takes an inconsistent position. Then, obviously, the statutory interpretation needs to happen again. Um, you know, for example, in this, but in this case, for example, a C. M. Uh, I'm sorry. M. H. Z. The board followed this case. This court's interpretation of Barahona Barahona is also not your typical Chevron. So we had a case previously in which we said we're following this because of Chevron deference. And we said in opinion, but for Chevron deference, we would we would interpret this differently. You say we're still bound by that decision under Loper Bright. Yes, but because we would have had to said the first time in order to rely on Chevron, we would have had to said it's genuinely ambiguous. Correct Step one. And therefore, we defer at step two. Correct. And you're not stuck with the case, Your Honor, because it can be reversed on bonk. It could be reversed by the Supreme Court. It could be reversed by statute. So, for example, in this case, should the court decide to, uh, follow Barahona, uh, petitioner could file a petition for own bank rehearing. But it's not to be. There's a difference. You're not reversing the case. You're saying we made that determination on the statutory interpretation based upon the agency's interpretation, and we gave it deference. We don't have to do that anymore. It would seem to me you don't have to give deference to that. That case, to the extent it relied on deference, that part about it. I don't think we're bound by that anymore. The case itself and maybe the interpretation, the reasonableness of the whole bit under Skidmore. Yes. But to say now we are bound by something an agency interpreted because we gave it deference, for which we no longer give you deference, is going to bound every future case now on that statute doesn't seem to follow to me. And it doesn't follow in the same vein as legislative history, because that's different. We're not talking about someone who made the determination for us. That's an independent determination of history. This is something an agency did that is done. If we had a case, if the Supreme Court said we had to rely upon an agency's determination of legislative history, and then said no, it doesn't seem to follow that. Once it says no, you don't have to do it. We're bound by those cases in which we defer to the interpretation of it. You see where I'm going with that? But as I say, I think it sounds like semantics, but it gets into a fundamental question here is where are we? Because when we get into this statute, we could be severely limited by cases on what is material and support and that sort of thing. And we are to the extent those cases are consistent with the reasonable interpretation of the statute, but not to Chevron deference. That's my opinion. Well, Your Honor, we're all struggling with this. It's a new world for all of us. But I think the Supreme Court and Loper-Bright, its perspective on the reason that those cases may remain precedential is that the statutory interpretation becomes part of the statute for purposes of Congress amending it or altering or changing it. And so, for example, the Barahona decision has been on the books since I think 2012. And so it's been in front of Congress for over 10 years that there's no duress exception to this material support bar. So it hasn't made any legislative decisions based on what could be this entirely new decision. So I think the idea that it does retain some precedential value is in part because of that. But you agree this is a new agency action here? Yes, this is a new agency action here. That's where I'm getting at. Loper-Bright did limit itself to say specific agent actions. This is a new agent action. Well, our perspective is that, yes, this new agency action MHC can absolutely be reviewed, but reviewed in light of the precedent set by Barahona. But Loper-Bright says that statutory stare decisis applies, right? Which means that's including statutory interpretation questions that were decided under Chevron. Correct. Can we get back to your materiality definition? Because I find it troubling that there seem to be no limitations on the way you're looking at the word material. So, for example, I asked a similar question to your friend on the other side, if a worker cleans the home of a terrorist, knowing that they're a terrorist, would that be material support under your definition? A cleaner, a dentist, providing dental services to a terrorist, would that be material support? It might be. It depends on if the terrorist is a member of a terrorist organization, then it would fall under that. Understood. So, if a house cleaner cleaned a room, if a dentist provided dental services, if a taxi driver gave a ride, knowing that the individual was a terrorist and all of the other qualifications, that would be material support under your definition? I can't answer those specific cases. It might be, but the fact of the matter is here, Congress has set up a deliberately extraordinarily broad definition, which is why it also has this equally extraordinarily broad exemption system. Would it depend upon like, I mean, might it depend upon sort of the frequency with which it's done? So, take somebody that cleans. Paul, who cleans my office back in Columbia, he gets security clearance and is able to sort of come in and out of our chambers in a particular way. And so, his sort of cleaning of the office sort of seems like a little bit different in a sort of way that he might be providing material support to me, where to me personally, I don't mean a terrorist, I'm not a terrorist, but I'm not going to admit to that here, at least. But maybe we wouldn't think about like, if I just happened to hop in an Uber and the Uber driver knew that I was a judge, we might not say that the Uber driver provided material support in the same way that Paul does when he cleans my office because of his background check and the position of trust that someone cleaning a judge's office might hold. Right. Well, yeah. Ultimately, there's a limitation is it has to promote, sustain, or maintain the organization. So, the question is, does that one off actually help anything? One example is... But the word material has to have a meaning. So, there's two words, there's material and support. And materiality wouldn't have to have a meaning modifying support, would it not? It depends on how Congress enacts it. And here, Congress has enacted them as a phrase, material support, and then given examples, none of which... And your definition seems to render the word material modifying support meaningless. You're suggesting that every form of support is definitionally material support. No, Your Honor, we're not. We're taking a different perspective, which is, the petitioner's arguing that material means the support has to go to terrorism. We're saying it doesn't. The support is material if it goes to promoting, sustaining, or maintaining the organization. So, something that doesn't promote, maintain, or sustain the organization is not material. The Seventh Circuit gave an example in, I believe it was a Cower case, where it talked about attending a terrorist meeting would not promote sustainer... It didn't use that particular language, but wouldn't be material support. So, the phone company providing a telephone line, it maintains the organization. Is that material support? A telephone company maintaining a telephone line for a terrorist organization? To the camp. Yes, certainly. I think that would be a fairly... An easier find there. But also, as Petitioner's counsel pointed out, there does have to be a knowledge element there. So, for example, if it's just a telephone line to an unknown destination that happens to be a terrorist, then whoever made the decision in the telephone company probably doesn't know that they're a terrorist or a terrorist organization, which is one of the requirements for material support. So, Congress defined material support with the... As I talked about all of these examples, and none of which are quantitative, and they involve typically tangible things like house, transportation, or funds. And these examples are all quantitative, and a few courts have agreed with us, we've cited them in our briefs. Do you think for money, as an example, that there is an immaterial amount? We're talking now about getting rid of pennies, right? They're gonna stop printing them, but stay with me for a minute that I still have them in my pocket. If I happen to know that someone was a terrorist and I flipped them a penny, do you think that I would then have an argument to say that whatever we wanna say, that's an immaterial amount of money? And maybe $2 a month for two years in a given country where the wages are much different than they are here might feel material, but a penny in a single instance might not be material? Is that a line that's at least feasible to draw? If it doesn't promote, sustain, or maintain the organization, it is a line, but it does run into the Supreme Court's decision in HLP, which cited Congress's statement in the 1986 ADPA Act, where it said any support to an organization facilitates that organization's terrorist acts. And then there's the cases in the Seventh Circuit, the SAB, that talks about even giving small amounts of money is absolutely material support because it could be combined to more significant amounts of money. So, and then Ray Maggi also has found, and Hinkaff has also found, any amount of money can be material support, which is why it's critical. Your point would be, in my penny example, that material doesn't describe the amount of money, it describes what money does for an organization. Correct. That's a different way of thinking about it. Exactly, it's whether it promotes or maintains. And so the more tangential what I do is to the organization, the more likely is that it might not be material, like the taxi cab drive, for an example. Correct. And in the penny example, although it does run into all the problems of all those cases, a penny might not help because somebody might just toss it. That's one reason why I think we're getting rid of pennies, is it goes in a big jar, never to be touched. Basically, it's hard to escape, at least the result here, is what you're really advocating, is what you say in your brief, is all support, any support. When you get into the business of a penny being flipped over there, you are not reasonably thinking that's gonna foster terrorism, it's just support. And so what Judge Burnham was getting to was, what does material add to this? Because we can get where you're going with a penny and everything else by saying, any support. And you can write stuff any way you wanna write it, and that's one of the beauty of being an appellate judge. You can write it the most convincing way you want to, and call it material, and say, well, you gave a penny, and I could see how a penny could be all you needed to get across a bridge to bomb a city over there, and therefore, it's material. Or you could probably take a more reasonable approach and say, we are textually looking at this situation here, and we'll say, what is support, and what is material support? And then if you add the word terrorism to it, what is material support for terrorism? And then you get into a penny example, you says, well, common sense says, that's not gonna make a person be a terrorist, unless you do have that penny to get you across the bridge, example into it, example like that. Here, you have a cook who, I guess, when you get into the facts of it, which really, that's kinda where we need to be, you have a cook who he's looking for a job, and as I understand it, he gets a job through help. He doesn't know who he's cooking for, is that correct? At the beginning, he doesn't have a clue who he's cooking for, does he? Well, he never said explicitly he did see the name of the organization, was the unknown gunman when he showed up, but that would be an issue on remand for fact findings. Right, right. But, okay, so he's cooking, and he's cooking this particular type of food, is it Igbo food that they like, and they like his cooking, and they make him cook just for them, and that's what he's doing. And all of a sudden, it seems like to me, when he does get to a position where he begins to see this organization kinda has something going on, he wants out of it, he can't get out of this organization, and yet all he's done is cook. He hasn't... Here's the key thing, he didn't provide the food, he didn't bring anything in, it's what I understand, he just cooks the food for people to eat it who are there. The question there is, is that material support? The answer is yes, if you see support being anything, yeah, they had to eat in order to eat, that made them healthy, and therefore they could commit terrorist activities, well, that's the end of support. Or was it support that actually supported a terrorist activity? I mean, that's kinda where we are in making that determination here, I'm not saying it's going one way or the other, but that's why I started with the proposition of how expansive do we look at this statute here in interpreting it? Do we now... Because I'm not convinced every time we applied Chevron deference to something that the board was using the same level, because they weren't bound by the same, but once the board made it, we gave it deference. That's the difference. The important point here, Your Honor, is that the statute doesn't prohibit material support for terrorism, it prohibits the material support for people who have committed terrorist acts, may not commit them in the future, prohibits material support to terrorist organizations. It doesn't tie it to those organizations committing terrorist acts, it also prohibits support to individuals who are members of terrorist organizations. Material support. You keep saying it prohibits support, it prohibits material support. You know, it prohibits material support to persons who are members of organizations. Again, it doesn't tie it to So what would be immaterial support? What would be support that would not be material that an individual who, I don't know, has some association with, what would be that? So, for example, the Seventh Circuit in the Common Decision pointed out that perhaps attending rallies of terrorist organizations wouldn't be material support. The board and ACM suggested that general statements... Do you agree that would be support? I mean, if I showed up at a rally, there's a sense in which I'm supporting that organization. Well, they actually called it a meeting, Your Honor. I'm sorry, I misspoke there. Either way, right? Whether it's a meeting or a rally, if I show up, there's a sense in which I'm supporting it, right? Or if I, you know, clap when the group walks past, I'm supporting. But we wouldn't naturally think of that as being, like, material support, right? Perhaps not. It would, of course, depend on the facts surrounding it. All of these are fact-specific inquiries, but that would be an example. You show up at a rally, you show up at a rally. I mean, that's, I mean, you haven't done anything. The question is, if you do something at that rally, if you do stand up with a sign and start jumping up and down, or you start yelling, yeah, yeah, for it, is that material support? That could be, but that also could fall into what the board talked about in ACM of just being a generalized statement of support. But if it's at a rally for that organization, it certainly seems much more tied. So, yeah, I mean, an example of support of saying, you went to a rally, you could have just been walking by there and looked over there and said, hmm, a rally. And that's it. And that's your example of what the Congress meant when it's, add the word material, that it has to be something as innocuous and divorced from the situation that you are sitting there. You could be, it sounds like to me, you're acknowledging as though you're in a building across the street with some binoculars looking at it. And that's not support. I got to agree with that, but that's not the same. It's no different than you walking down and standing there and just looking. You just got yourself closer. The closeness is still there. I don't think that would be material support either. Actually, the question I'm asking is, what is an example of, that makes it immaterial support? Support, because that's not support. That's not support at all, what you just said. Standing up in a crowd is not support at all. What is support that is material? So what is an example of when support is immaterial? Again, I have to go back to what the board said. Is it, I'm sorry, can I answer this question? I have to go back to what the board said, which is that material support is when it promotes, sustains, and retains the organization. If it doesn't do that, it can't be a material support. And critically, Congress did set up, it's extraordinarily broad. Courts have acknowledged over and over again, it's extraordinarily broad. Some have called it overbroad. Critically, Congress set up this exemption scheme that includes de minimis material support, that includes support under duress. It acknowledged this in 2008 when it required reports on duress exemptions to it. Is there a de minimis? Does the phrase de minimis appear in the statute? No, Your Honor. But there is an exemption... What did you mean by that? I heard that too. You said Congress created a de minimis material support exception? It created the broad exemptions. DHS created, I'm sorry, I'm out of time, so I may have spoken too quickly. No, you're good. But Congress created this broad exemption system that has been used extensively by DHS. And one of the things they've exempted is duress. Actually, there have been a number of different kinds of duress exemptions. They have exemptions for de minimis or minimal material support, both of which this particular petitioner might have been eligible for, but he also needed to be eligible for the underlying relief, and there were three reasons that he wasn't. So there was no exemption available to him here. So even if he were to prevail, the agency would still have to consider his underlying eligibility. All right, I see I'm very out of time. Thank you. Mr. Kimmel, you got a few questions. Thank you, Your Honor. If I may just briefly address the materiality and then address the lower right questions in just a second. The court is getting to the core problem with the government's definitions here with support and material support. The government has repeatedly said, and as they said in the brief, that support means something that promotes, maintains, or sustains the organization. So why wouldn't I use as the example that if I want to write letters to the editor that support Hamas, right, or some other organization, I might be writing those letters, but I thought what we've suggested is where they are like not coordinated, right, I'm not doing it at their behest, I'm not doing it to raise funds for them, I'm just expressing my support for their terrorist goals, that that wouldn't be material support. It's plainly support. Like I'm writing a letter to the editor in support, but we wouldn't call that in any sense material support. Maybe it's not the Supreme Court, maybe HLP says this, but maybe it's elsewhere, that that wouldn't be material support because it's like independent advocacy. So, Your Honor, that may be the colloquial understanding of support, but that's not the definition that the government has provided for support, which is something that maintains and sustains the organization. That definition, support that rises to a level of maintaining and sustaining an organization, also rises to the government's level of something that has a logic. I take the government to be reading material support sort of as a phrase, not to sort of try to break it out into two pieces, right, and I take them to be saying material support means that, not, right, writing in support or, you know, showing up knowingly, has to be knowingly, you can't just stumble there, but knowingly showing up in support of a rally, that might be support in the sense that that word used in isolation might be, but nobody would think of that as providing material support to that organization, absent some coordination or absent some action, you know, raising funds, doing something beyond just advocacy, right? I mean, it seems like to me that's sort of what HLP is telling us, this distinction is. But both words have to have some meaning, and that's to go, and as we point out in our brief, the Supreme Court in Kunjus in the INA context has held that materiality, when the word is or isn't included, changes the definition and it changes the threshold. So it's not a phrase, that both words have to have some meaning here, Your Honor, and if it is not, if it doesn't rise to the definition of support that the government has provided, something that maintains and sustains the organization, then it doesn't rise to the level of material support. Those are essentially coterminous terms. They are, the support is sitting at the level of where, there's no gap, there's nothing that falls in that gap under those definitions. But our job is just to define them, right? Whether the government says it or not, like, doesn't matter anymore. This is the point of the earlier conversation, right? So the question is, like, what do these mean together? And it seems to me the natural meaning of the word support would include my, like, independent advocacy for an organization, even though, like, we wouldn't naturally think of that as providing material support in the sense that it's not actually, like, lending them aid. I understand, so that just means, but that's essentially saying that the difference between support and material support is speech. I mean, this is your advocacy, but that isn't, that definition. That's one example, right? We were trying to talk about examples. I think we can talk about the taxicab as maybe a different example, but, like, this seems like the paradigmatic example that HLP is focused on, at least my recollection of HLP, to be fair. This is the example that they're focused on as not, what is at issue? It may be, but that just seems, that would be, to simply say that advocacy kind of support, First Amendment type of support is what Congress meant when it included the word material. It doesn't, it would be a very inconsistent way that the word material is used across federal law and inconsistent with the definitions. To take those definitions that are used after, not the definitions, sorry, the examples that were used after, in your honor, of weapons and explosives and funds are the type of thing that go to our definition, which is significance and relevance, not speech and advocacy. Those are the... Some of the words do, but not all of them, right? But none of them have to do with advocacy, your honor. None of them, none of them indicate an advocacy distinction. Because they're not included. That's the sort of point, right? Is that like, they don't include advocacy because it's not material support. They don't include advocacy because it's not support either, your honor. That is the, that's the distinction we're making, is that advocacy support doesn't, doesn't satisfy that definition or that sort of First Amendment distinction. There isn't the, isn't the distinction between material and support or at least nowhere else in the, in the statutory examples, nowhere else in, that would change that sort of distinction, your honor. And, and to take, to take one other, and to take that example, your honor. You know, it's, it's, it's a matter of focusing on the statute Congress has done. And, you know, when we get down to it, Congress gave some stock examples of what is support. I mean, we say safe house, things that are there, the actual transportation, communications, lands, funds. They didn't get into business like, did you mow the grass or did you cook or did you do things like that? That's what the court has done. We've moved this bar by using this term, taking this term support alone. It seems to me you don't even need material on it. I mean, one part of it says other material financial support. It could have just said financial support, but it said material financial support on it. And, you know, where's the court? As I say, we can read these things how we want to. We could say, well, we're going to make that support. And just when you write an opinion, I promise you it's going to be support. Whether Congress wrote it or not, or even intended, I don't think anyone here probably thinks Congress was thinking about a guy who goes over and just cooks a meal for some people who are sitting there is what they sat down and wrote a statute about here. They wrote a statute that deals with people who actively are participating in supporting a terrorist organization and not people like your client in this instance, who it appears from the facts here. I mean, there are other things that are considered. I'm not going to get into that aspect of it, but at least in terms of this act of it here, that's not that doesn't appear to rise from the text of this statute at all. I mean, that's something we've added into, and the more we talk ourselves into it, yeah, we can make support material just by adding examples and coming up with all kinds of analogies for things that really just not here. And I mean, it's a question we just have to deal with one way or the other here. Yes, Your Honor, if I may, just just briefly. Yes, Your Honor. Just briefly. We wholeheartedly agree that Mr. Roomba's forced cooking did not rise to that level, did not push the support above a materiality threshold. Thank you, Your Honor. All right. We want to thank both counsel, particularly want to thank you, Mr Kimball, for having served here in a pro bono status. To do that is helps us to do the work of this court because we have many cases in which we have to rely upon counsel to provide services to two clients of this sort. Otherwise it would be difficult to get representation. Of course, Mr Stone, you ably represented your client as well. So we'll come down and greet counsel.
judges: James Andrew Wynn, Julius N. Richardson, Nicole G. Berner